FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

NOT FOR PRINT OCT 03 2007 ★
ELECTRONIC PUBLICATION

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JERMAINE SEAL,

                Plaintiff,

                -against-

MICHAEL F. HOGAN, Ph.D.,
Commissioner of Mental Health;
PETER USCHAKOW, Director,
Brooklyn Development Center;
JAN WILLIAMSON, Deputy Director;
PATRICIA DELOREY-PAWLOWSKI, Consultant;
JANET McFARLAND, Esq.;
MARK FISHBERG, M.S. Psych II; and
Social Worker SHAVON MYRIE,

                Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

07-CV-3508 (ARR)(LB)

ROSS, United States District Judge:

Plaintiff Jermaine Seal brought this *pro se* action pursuant to 42 U.S.C. §§ 1983, and 1985(3). By order dated September 14, 2007, the Court granted plaintiff's application to proceed *in forma pauperis*, dismissed two of the original named defendants, and directed plaintiff to file an amended complaint. The Amended Complaint was received by the Court on September 24, 2007.

## BACKGROUND

Plaintiff brought this lawsuit challenging his commitment to the Brooklyn Developmental Center ("B.D.C."), a facility operated by the New York State Office of Mental Retardation and Developmental Disabilities. He alleges that he was first committed to the B.D.C. on December 7, 2004 on a Temporary Order for Observation, pursuant to Section 730.40 of New York's Criminal Procedure Law ("CPL 730.40"), following his indictment on criminal charges.

(Original Complaint, Exhibit A, Brooklyn Developmental Center Psychology Contingency Plan – Revised; Am. Compl. ¶ 14.) That order expired on February 17, 2005. (Id.) Plaintiff alleges that he was not indicted on the criminal charges that were used as the basis for the temporary order of observation, but that he continued to be held by the B.D.C. for over two years after the temporary order had expired. (Am. Compl. ¶ 14.) He has not indicated any other provision of the Criminal Procedure Law or New York's Mental Hygiene Law that would justify his continued involuntary retention or commitment.

Plaintiff alleges that he and members of his family verbally complained to staff members and officials at the institution, but that these officials indicated that they did not have the authority to release him. (Am. Compl. ¶ 13.) In particular, he avers that he spoke with defendant Patricia Delory-Pawlowski, Esq., and that one of his relatives, a Mr. Johnson, spoke with defendants Shavon Myrie and Janet McFarland, Esq., and informed them that his retention violated the law. (Am. Compl. ¶ 14.) He further alleges that each of these defendants denied that they had the authority to release him, "looked the other way," and/or referred him to other officials, all to no avail. (Id.) Moreover, he alleges that each of the named defendants engaged in a conspiracy to continually retain him at the B.D.C. for the purpose of receiving federal funds for each day that he remained in custody. (Id.) After plaintiff filed this lawsuit, he submitted a change of address request, dated August 30, 2007, indicating that he has now been released from the B.D.C.

Plaintiff alleges that his retention by the B.D.C. after the expiration of the Temporary Order of Observation violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and that defendants have conspired to violate his

rights. He seeks "a federal investigation in the illegal detention of plaintiff's persons as well as others," $4 million in compensatory damages, $500,000 in punitive damages from each defendant, and this Court's review of the records of his custody at the B.D.C. (Am. Compl. ¶ 16.)

## DISCUSSION

### A. Standard of Review

In reviewing this complaint, the Court is mindful that plaintiff is proceeding *pro se* and that his pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999). However, 28 U.S.C. § 1915(e)(2)(B) requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### B. Section 1983

Plaintiff alleges that defendants' actions violated his civil rights. A claim for violations of constitutional rights is cognizable under 42 U.S.C. § 1983 ("§ 1983"). In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of

3

must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).

As for the first element, section 1983 imposes liability for constitutional deprivations caused by "state actors." The New York State Office of Mental Retardation and Developmental Disabilities, which administers the B.D.C., is a state agency. Plaintiff alleges that defendants McFarland, Mark Fishberg, and Shavon Myrie are employees of the B.D.C. Plaintiff alleges that defendant Delorey-Pawlowski is a consultant to the executive director of the B.D.C. and that she interviewed him and reviewed his file on behalf of the B.D.C. (Am. Compl. ¶ 14.)

A § 1983 plaintiff seeking to recover money damages must also establish that the named individual defendants were personally involved in the wrongdoing or misconduct complained of. A supervisory official is deemed to have been personally involved only if that official directly participated in the infraction; if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). This Court's September 14, 2007 Order dismissed defendant Mayor Michael

4

Bloomberg and directed plaintiff to identify the specific roles of additional supervisory defendants. The Amended Complaint alleges the personal involvement of defendants Delorey-Pawlowski, McFarland, and Myrie, but is silent as to the alleged roles of the State Commissioner of the Office of Mental Health and the Director and Deputy Director of the B.D.C. As plaintiff has failed to allege any direct personal involvement by these individuals, the claims against supervisory defendants Michael F. Hogan, Peter Uschakow, and Jan Williamson are dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii).

With regard to the second element of a section 1983 claim, plaintiff alleges that his confinement at the B.D.C. violated his right to due process under the Fourteenth Amendment, along with other constitutional rights. The Supreme Court has ruled that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979). New York State has established separate statutory schemes for commitment to state mental health facilities. On the one hand, the Criminal Procedure Law governs commitment of criminal defendants who may be unfit to stand trial, see CPL § 730.10 et. seq., or who have been determined, by a plea or a verdict to be found not responsible by reason of mental disease or defect, see CPL § 330.20. On the other hand, the Mental Hygiene Law governs the involuntary civil commitment of persons suffering from mental illness. See NY Mental Hyg. Law § 9.

Although plaintiff was initially committed on the basis of an initial temporary order of observation pursuant to CPL § 730.40, following his indictment on criminal charges, that order expired on February 17, 2005. (Original Complaint, Exhibit A, Brooklyn Developmental Center Psychology Contingency Plan – Revised.) Plaintiff alleges that he was not indicted on the

criminal charges that were used as the basis for the temporary order of observation and that he should have been released upon the expiration of that order. (Am. Compl. ¶ 14.)

### C. Section 1985(3)

Plaintiff also alleges conspiracy to deprive him of his constitutional rights, in violation of 42 U.S.C. § 1985(3) ("§ 1985(3)"). To make out a violation of § 1985(3), a plaintiff "must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983). With respect to the second element, a plaintiff must show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Id. (internal quotation omitted); see also Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999). Plaintiff was given an opportunity to replead this claim, but the Amended Complaint fails to allege a deprivation of rights on account of his membership in a protected class. Accordingly, the § 1985(3) claim is dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### CONCLUSION

For the forgoing reasons, all of plaintiff's claims against defendants Hogan, Uschakow, and Williamson are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). No summons shall issue as to these defendants. Plaintiff's § 1985(3) claims are dismissed as to all defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The remaining claims shall go forward. The United States Marshals Service is directed to serve Plaintiff's Complaint and Amended Complaint and a

copy of this Order on defendants Delorey-Pawlowski, McFarland, Fishberg, and Myrie, without the prepayment of fees. The case is referred to the Honorable Lois Bloom, United States Magistrate Judge, for pretrial supervision. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/S/
ALLYNE R. ROSS
United States District Judge

Dated: Brooklyn, New York
October 2, 2007

## SERVICE LIST

*Pro-se Plaintiff*

130-30 146th Street
South Ozone Park, NY 11436
(718) 487-4801

*Pro-se Plaintiff*